UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
MAY 0 6 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-326-GWU

LINDA L. BROWN,            PLAINTIFF,

VS:        <u>MEMORANDUM OPINION</u>

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT,

<u>INTRODUCTION</u>

Linda Brown brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

<u>APPLICABLE LAW</u>

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

     1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

     2.     Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1508, 416.908.

     3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

     4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

     5.     Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Linda Brown, a 55 year-old former licensed practical nurse with a high school education, suffered from impairments related to a major depressive disorder, anxiety, dysthymia, systemic hypertension, a history of fibromyalgia, osteopenia, and lumbar spine disease. (Tr. 22, 26-27). The ALJ found that as of November 15, 2002, her 55th birthday, Rule 202.14 of the Medical-Vocational Guidelines mandated a finding of disabled status. (Tr. 32). With regard to the time period before this date and pertinent to this appeal, the plaintiff was still found to be unable to return to her past relevant work, but the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 31). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled for this time frame. (Tr. 31-32). The ALJ based the unfavorable portion of the decision, in large part, upon the testimony of a vocational expert. (Tr. 30).

After review of the evidence presented, the undersigned concludes that

5

the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Susan Kehoe included an exertional restriction to light level work along with such non-exertional restrictions as (1) a "good" ability to understand, remember, and follow instructions; and (2) a "fair" ability to sustain attention to perform simple instructions repetitive tasks, relate to others and tolerate the stress and pressures associated with day-to-day work activity.[1] (Tr. 298-299). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 300). Therefore, assuming that the vocational factors considered by Kehoe fairly characterized Brown's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. Dr. Mark Carter, an examining consultant, examined Brown and concluded that her hypertension was under good control and that there was no sign of advanced arthritic disease, impaired range of motion, or radiculopathy. (Tr. 145). X-rays of the lumbar spine had revealed only "mild" degenerative changes and possible scoliosis while an x-ray of the left shoulder was unremarkable. (Tr. 145). Dr. Carter imposed no physical restrictions. (Tr. 143-148). Dr. Diosdado Irlandez, a non-examining medical reviewer, opined that the plaintiff did not suffer from a "severe" physical

---

[1]Kehoe was confused about the apparent contradiction in the question between the "good" ability to understand, remember and follow instructions and the "fair" ability to sustain attention to perform simple, repetitive tasks. (Tr. 299). However, the ALJ later clarified the question by indicating that the first part of the question related to cognitive ability to initiate a task while the second part was about persisting on task. (Tr. 299).

6

impairment. (Tr. 187). The ALJ's findings would appear compatible with these opinions.

Brown argues that the ALJ erred in rejecting as binding the opinions of Dr. Martha Woolum (Tr. 128) and Dr. Steven Morgan (Tr. 258), her treating physicians at Internal Medicine Associates, that she was totally disabled. However, in reaching these conclusions, both these physicians appeared to rely primarily upon mental problems outside their area of expertise. Dr. Chintamani Vora, the only mental health professional of record to identify specific mental restrictions, identified far less severe mental problems. (Tr. 142). The Administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical problems related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. Section 404.1527(d)(5). Therefore, the ALJ properly rejected the disability opinions of Dr. Woolum and Dr. Morgan.

The ALJ also dealt properly with the evidence of record relating to Brown's mental condition. The mental restrictions presented by the ALJ came from Dr. Vora. (Tr. 142). The only impairments noted by the plaintiff's treating source at the Cumberland River Comprehensive Care Center were that she would have a "slightly low" ability for societal/role functioning and interpersonal functioning. (Tr. 248). The mental factors of the hypothetical question appear essentially consistent with this opinion. The claimant notes that the Global Assessment of Functioning (GAF) rating of 50 was also identified by her treating source at the Cumberland River. (Tr. 237). Such a GAF suggests the existence of "serious" psychological symptoms, according to The American Psychiatric Association: Diagnostic and Statistical Manual for Mental Disorders (4th Ed.-Revised, 1994). However, the Cumberland River treatment notes do not support such a severe

7

rating. The claimant was noted (1) to be neat in appearance; (2) to be friendly and cooperative; (3) to be alert and attentive; (4) to exhibit normal psychomotor activity; (4) to have a full range and appropriate affect; (5) to be oriented to person, place and time; (6) to have an intact recent and remote memory; and (7) to exhibit clear and coherent speech and thought. (Tr. 220-221, 223, 227, 231, 235). Finally, the hypothetical question was also essentially compatible with somewhat differently-worded mental restrictions indicated by the non-examining medical reviewers. (Tr. 164-165, 183-184). Therefore, these reports support the administrative decision.

Brown argues that the ALJ erred in failing to properly consider her impairments in combination. However, the Court has already found that the hypothetical question fairly characterized her mental and physical condition. Therefore, the ALJ necessarily considered these impairments in combination.

Brown argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Brown was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. First, the medical evidence does not appear sufficient to confirm the severity of the alleged pain. Second, objective medical

8

evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Brown's pain complaints.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___6___ day of April, 2005.

G.WIX UNTHANK
SENIOR JUDGE